**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,     )
                                 ) Case No. 1:15-CR-00020
                                 )              (RJA)(HBS)
            Plaintiff,   )
                                 )
vs.                              ) September 8th, 2015
                                 )
DAMON HUNTER,              )
                                 )
              Defendant.   )

**TRANSCRIPT OF PLEA**
**BEFORE THE HONORABLE RICHARD J. ARCARA**
**SENIOR UNITED STATES DISTRICT JUDGE**

<u>APPEARANCES</u>:

For the Plaintiff:    JAMES P. KENNEDY, JR.
                         ACTING UNITED STATES ATTORNEY
                         BY:  WEI XIANG, ESQ.
                         ASSISTANT UNITED STATES ATTORNEY
                         138 Delaware Avenue
                         Buffalo, NY 14202

For the Defendant:    CANTOR DOLCE & PANEPINTO PC
                         BY:  SAMUEL P. DAVIS, ESQ.
                         1600 Main Place Tower
                         350 Main Street
                         Buffalo, NY 14202

Court Reporter:      MEGAN E. PELKA, RPR
                         Robert H. Jackson Courthouse
                         2 Niagara Square
                         Buffalo, NY 14202

US v DAMON HUNTER -- PLEA

1    THE CLERK:  All rise.  You may be seated.  Criminal

2  Action 2015-20A.  United States vs. Damon Hunter.  Plea.

3  Counsel, please state your name and the party you represent

4  for the record.

5    MR. DAVIS:  Good morning, Your Honor.  Samuel Davis

6  on behalf of the Mr. Hunter.

7    MR. XIANG:  Good morning, Your Honor.  Wei Xiang for

8  the government.  Judge, we have a plea agreement the parties

9  have executed.

10    THE COURT:  That's your understanding, Mr. Davis?

11    MR. DAVIS:  That's correct, sir.

12    THE COURT:  All right.  Would you administer the oath

13  to Mr. Hunter?

14  (The defendant was sworn at 11:55 am.)

15    THE COURT:  Mr. Hunter, you are now under oath, sir

16  and being under oath during the course of these proceedings,

17  I'll be asking you a number of questions.  You'll have to

18  answer those questions honestly and truthfully.  If you were

19  to give me any false answer, that false answer may be used

20  against you in a further prosecution brought by the government

21  on a charge of perjury or making a false statement while under

22  oath.  Do you understand that, sir?

23    THE DEFENDANT:  Yes, sir.

24    THE COURT:  It's also very important that you

25  understand what your rights are.  If at any time during the

US v DAMON HUNTER -- PLEA

1   course of these proceedings, there's something you do not

2   understand, you want to ask me a question, you want to consult

3   with your attorney, you want something more fully explained to

4   you, you're free to do so.  You're encouraged to do so.  It's

5   not important that we get this over with as quickly as

6   possibly.  What's important is that I'm satisfied that you

7   fully understand what your rights are.  Do you understand

8   that, sir?

9           THE DEFENDANT:  Yes, sir.

10          THE COURT:  It is my understanding you're here today

11  to waive certain rights and to plead guilty to Count 1 under

12  the terms and conditions of the plea agreement.  Do you

13  understand this charge, sir?

14          THE DEFENDANT:  Yes.

15          THE COURT:  Mr. Davis, you have gone over this charge

16  with your client.  Are you satisfied he understands it?

17          MR. DAVIS:  Yes, I am.

18          THE COURT:  Any reason for me to go through any

19  further explanation?

20          MR. DAVIS:  I don't believe so, Judge.

21          THE COURT:  And how about under his terms and

22  conditions of the plea agreement?  You reviewed that with him?

23          MR. DAVIS:  Yes, Judge.

24          THE COURT:  And his rights under Rule 11, right to a

25  trial, et cetera?

```
 1              MR. DAVIS:  Yes.

 2              THE COURT:  Now, Mr. Hunter, you discussed this whole

 3   matter with your attorney.  He's explained what your legal

 4   rights are, what your legal options are.  You probably didn't

 5   like to hear what he had to tell you, but he's not there to

 6   make you feel good.  He's there to be your legal advisor.  And

 7   apparently based on those discussions, you're here today to

 8   waive certain rights and to plea guilty to this charge under

 9   the terms and conditions of the plea agreement.  Are you fully

10   satisfied with the advice and counsel you received from

11   Mr. Davis?

12              THE DEFENDANT:  Yes.

13              THE COURT:  Any complaints?

14              THE DEFENDANT:  No, sir.

15              THE COURT:  All right.  Let's proceed to the plea

16   agreement.

17              MR. XIANG:  The defendant Damon Hunter and the United

18   States Attorney for the Western District of New York, herein

19   after the government, hereby enter into a plea agreement with

20   the terms and conditions as set out below.  The defendant

21   agrees to plead guilty to Count 1 of the indictment, charging

22   a violation of Title 18 United States Code Section 1623(a),

23   false declarations before a Grand Jury, for which the maximum

24   possible sentence is a term of imprisonment of five years, a

25   fine of $250,000, a mandatory $100 special assessment and a
```

US v DAMON HUNTER -- PLEA
4

1    term of supervised release of three years.  The defendant

2    understands that the penalties set forth in this paragraph are

3    the maximum penalties that can be imposed by the Court at

4    sentencing.

5              THE COURT:  Do you understand that, sir?

6              THE DEFENDANT:  Yes, sir.

7              THE COURT:  Mr. Davis, did you explain to Mr. Hunter

8    the importance of that paragraph?

9              MR. DAVIS:  Yes, I did, Your Honor.

10             THE COURT:  All right.  What is the importance?

11             MR. XIANG:  Paragraph 1 satisfies the requirement of

12   Rule 11 of the Federal Rules of Criminal Procedure by

13   notifying the defendant of the maximum penalty.  The Court

14   also must consider but is not bound by the federal sentencing

15   guidelines.  The sentencing guidelines went into effect on

16   November 1st, 1987 and are relevant to federal offenses

17   committed after that date.

18             The purpose of the sentencing guidelines is to

19   establish a sentencing system in which courts will impose

20   similar sentences for similar crimes upon defendants who are

21   similar in ways, according to the guidelines, are relevant to

22   sentencing.  If the sentencing guideline procedure is

23   followed, the Court would impose a sentence within a range on

24   a sentencing table in the sentencing guidelines manual.  This

25   range would depend on the defendant's criminal conduct and the

1  defendant's criminal history.

2  　　　　The law requires the Court to consider imposing the

3  sentence in accordance with the sentencing guideline

4  procedure.  The law permits the Court, however, to impose a

5  reasonable sentence without adhering to the sentencing

6  guidelines.  If the Court decides to impose a sentence other

7  than the one prescribed by the sentencing guidelines, the

8  Court must state its reasons for doing so.

9  　　　　THE COURT:  Do you understand that, sir?

10  　　　　THE DEFENDANT:  Yes.

11  　　　　THE COURT:  We're going to go through, Mr. Hunter,

12  the guidelines in a few minutes.  When we go through them,

13  I'll assume you understand it because I'm sure Mr. Davis

14  explained it to you, but if you have any questions, let's me

15  know, okay?

16  　　　　THE DEFENDANT:  Okay.

17  　　　　MR. XIANG:  Paragraph 2.  The defendant understands

18  that if it's determined that the defendant had violated any

19  terms or conditions of supervised release, the defendant may

20  be required to serve in prison all or part of the term of

21  supervised release up to two years without credit for time

22  previously served on supervised release.  As a consequence, in

23  the event the defendant's sentenced to the maximum term of

24  incarceration, a prison term imposed for a violation of

25  supervised release may result in the defendant serving a

US v DAMON HUNTER -- PLEA

6

1    sentence of imprisonment longer than the statutory maximum set

2    forth in paragraph 1 of this agreement.

3            THE COURT:  Do you understand that, sir?

4            THE DEFENDANT:  Yes.

5            MR. XIANG:  Elements and factual basis.  The

6    defendant understands the nature of the offense set forth in

7    paragraph 1 of this agreement and understands that if this

8    case proceeded to trial, the government would be required to

9    prove beyond a reasonable doubt the following elements of the

10   crimes.

11           The testimony before the Grand Jury was given while

12   the defendant was given under oath, such testimony was false

13   as set forth in the indictment, the matter as to which it is

14   charged, the defendant gave false testimony were material to

15   the issues under inquiry by the Grand Jury and such false

16   testimony was given knowingly.

17           THE COURT:  Do you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  Okay.

20           MR. XIANG:  Factual basis.  The defendant and the

21   government agree to the following facts, which form the basis

22   for the entry of the plea of guilty, including relevant

23   conduct.

24           On or about the afternoon of August 30, 2012, Quincy

25   Balance was murdered in the vicinity of Northland Avenue and

1  Stevens Avenue, Buffalo, New York.  The Erie County New York

2  medical examiner determined the cause of death to be multiple

3  gunshot wounds.  At almost the same that Balance was murdered,

4  the defendant was standing near Balance was also shot at

5  multiple times by a person using a firearm.

6          The defendant knew and recognized the shooter as

7  Roderick Arrington, also known as "Ra-Ra."  The defendant also

8  knew and recognized three individuals at the shooting

9  associated with Harrington as Marcel Worthy, a.k.a. "Cheese";

10  Aaron Hicks, a.k.a. "Boog," a.k.a. "Boogy" and James Robs,

11  a.k.a. "Jimmy."  The defendant knew all four individuals

12  through personal interactions with them on the East Side of

13  Buffalo and knew that they believed the defendant and Balance

14  were involved in the shooting murder of Walter Davidson,

15  a.k.a. Matt, on or about August 26th, 2012, on Colonel Street,

16  Buffalo, New York.

17          Hours after the shooting on August 30th, 2012, the

18  defendant gave a true statement to the City of Buffalo

19  homicide detectives detailing the circumstances of the

20  shooting.  The defendant actually described how he and Balance

21  stopped to speak with Hicks regarding the Davidson murder, how

22  Worthy and Robs arrived and surrounded them in separate cars

23  and how Arrington walked up with a handgun, shot Balance until

24  he fell and then discharged the handgun at the defendant while

25  the defendant ran away.  The defendant also truthfully

US v DAMON HUNTER -- PLEA

1  identified Arrington, Worthy and Robs via photographic lineup

2  to police.

3         On or about November 14th, 2014, a Grand Jury of the

4  United States District Court for the Western District of New

5  York was conducting an investigation to determine whether

6  violations of Title 18 United States Code Sections 922(g)(1),

7  924(c) and 1959(a) had been committed during the shooting and

8  murder of Quincy Balance and the attempted murder of the

9  defendant on or about August 30th, 2012 in the City of

10  Buffalo, New York.

11        It was material to said investigation to identify the

12  person who had possessed, used and discharged the firearm

13  during the murder of Balance and the attempted murder of the

14  defendant as well as to identify the persons who caused the

15  commission of and conspired to commit the aforementioned

16  violations of federal law.

17        The defendant, while appearing as a witness under

18  oath at a proceeding before the Grand Jury, falsely recanted

19  his identification of Arrington as the person who killed

20  Balance and shot at the defendant.  The defendant testified

21  that he was mistaken about Arrington being the shooter when he

22  knew that he observed Arrington as the shooter.

23        Among other reasons for lying to the Grand Jury, the

24  defendant was afraid of retribution from Arrington and his

25  associates and for being labelled as a snitch if Arrington

1   were indicted based on the defendant's testimony.   The

2   defendant was also upset and not receiving any sentencing

3   benefits in his Erie County firearm conviction for cooperating

4   with the federal investigation.

5            THE COURT:  Do you understand all that, sir?

6            THE DEFENDANT:  Yes.

7            THE COURT:  How would prove all this?

8            MR. XIANG:  We have the statements transcribed,

9   statements that are described in here that the defendant gave

10  to Buffalo Police hours after the shooting.  We have the

11  photographic lineups that he's signed for and we have multiple

12  statements he made not only to federal investigators in the

13  year 2014 as well as recorded statements he made to other

14  individuals in his jail calls.

15            And finally, we have a letter that the defendant

16  wrote to Roderick Arrington for which what he executed a

17  search warrant on Arrington's jail cell and recovered the

18  letter describing some of the concerns that are detailed in

19  the factual basis.

20            THE COURT:  Do you understand that, sir?

21            THE DEFENDANT:  Yes.

22            MR. XIANG:  Sentencing guidelines.  The defendant

23  understands that the Court must consider but is not bound by

24  the sentencing guidelines, the Sentencing Reform Act of 1984.

25  The government and the defendant agree that guideline sections

1   2J1.3(c)(1), 2X3.1(a)(1), 2X3.1(a)(3)(a), 2E1.3(a)(2) and

2   2A1.1(a) apply to the offensive conviction and provide for a

3   base offense level of 30.

4           THE COURT:  Do you understand that, sir?

5           THE DEFENDANT:  Okay.

6           THE COURT:  You saw this table with all these numbers

7   on it?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Yeah, this is important.  You're going to

10  end up somewhere on this table.  Where you end up, those are a

11  range of months that are being recommended to the Court as to

12  what the sentence should be.  Now, for this particular

13  violation, the range is 97 to 121 months, but there's a

14  statutory maximum of five years, I believe, the charge he's

15  pleading guilty to.

16          MR. XIANG:  That's correct, Your Honor.

17          THE COURT:  This is a result of Mr. Davis's efforts

18  to persuade the government to allow him to plea to a lesser

19  charge.

20          MR. XIANG:  Well, the Count 2 would have a higher

21  maximum of 20 years and it would encompass more than just the

22  range, but, yes, this is part of the negotiations that we're

23  allowing the defendant to plea only to Count I.

24          THE COURT:  If he had gone to trial and if he had

25  been convicted, he'd be facing a lot more time here I assume.

1        MR. XIANG:  That's right.  The statutory maximum of

2   20 plus 5 years.

3        THE COURT:  Do you understand all that, sir?

4        THE DEFENDANT:  Yes.

5        THE COURT:  Okay.  This is the result of your

6   attorney being able to persuade the government to give you a

7   plea to this charge rather than go to trial on the indictment.

8   Because if you went to trial on the indictment, the penalty

9   provisions, if you were convicted, would be much substantially

10   higher.  Do you understand that?

11        THE DEFENDANT:  Okay.

12        THE COURT:  Okay.

13        MR. XIANG:  Acceptance of responsibility.  At

14   sentencing, the government agrees not to oppose the

15   recommendation that the Court apply the two-level downward

16   adjustment of guideline sections 3E1.1(a), acceptance of

17   responsibility, and further agrees to move the Court to apply

18   the additional one level downward adjustment of guideline

19   sections 3E1.1(b), which would result in a total offense level

20   of 27.

21        Criminal history category.  It is the understanding

22   of the government and the defendant that the defendant's

23   criminal history category is 4.  The defendant understands

24   that if the defendant is sentenced for or convicted of any

25   other charges prior to sentencing in this action, the

1   defendant's criminal history category may increase.  The

2   defendant understands that the defendant has no right to

3   withdraw the plea of guilty based on the Court's determination

4   of the defendant's criminal history category.

5           THE COURT:  Do you understand that, sir?

6           THE DEFENDANT:  Yeah, I understand.

7           THE COURT:  Okay.

8           MR. XIANG:  Guidelines application, calculations and

9   impact.  It is the understanding of the government and the

10  defendant that with a total offense level of 27 and criminal

11  history category of 4 and taking into account the statutory

12  maximum penalty, the defendant sentencing range will be a term

13  of imprisonment of 60 months, a fine of 12,500 to $125,000 and

14  a period of supervised release of one to three years.

15  Notwithstanding this, the defendant understands that at

16  sentencing, the defendant is subject to the maximum penalty

17  set forth in paragraph 1 of this agreement.

18          THE COURT:  Do you understand that, sir?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Okay.

21          MR. XIANG:  The government and the defendant agree to

22  the sentencing guidelines calculations set forth in this

23  agreement and neither party would advocate or recommend the

24  application of any other guideline or move for any guideline

25  departure or move for or recommend a sentence outside the

US v DAMON HUNTER -- PLEA

13

```
 1   guideline, except as specifically set forth in this agreement.
 2   A breach of this paragraph by one party will relieve the other
 3   party of any agreements made in this plea agreement with
 4   respect to sentencing motions and recommendations.  A breach
 5   of this paragraph by the defendant shall also relieve the
 6   government from any agreement to dismiss or not pursue
 7   additional charges.
 8          The government and defendant agree that as the
 9   defendant is presently serving an undischarged State term of
10   imprisonment under Erie County Court Case No. 01883-2013.  The
11   defendant specifically reserves the right to recommend that
12   the sentence for the instant offense be imposed concurrently
13   to the remainder of the undischarged State term of
14   imprisonment.  The defendant understands, however, that the
15   government will oppose such a recommendation and that the
16   Court is not bound to sentence the defendant concurrently with
17   the undischarged State term of imprisonment.
18          THE COURT:  Do you understand that, sir?
19          THE DEFENDANT:  Yes.
20          THE COURT:  Okay.
21          MR. XIANG:  The defendant understands that the Court
22   is not bound to accept any sentencing guidelines calculations
23   set forth in this agreement and the defendant will not be
24   entitled to withdraw the plea of guilty based on the sentence
25   imposed by Court.
```

1        THE COURT:  Do you understand that, sir?

2        THE DEFENDANT:  Yes.

3        MR. XIANG:  Next is statue of limitations.

4        THE COURT:  Any reason to read that section,

5   Mr. Davis?

6        MR. DAVIS:  No, Judge.

7        THE COURT:  How about government rights and

8   reservations?

9        MR. DAVIS:  No, Your Honor.  We understand those.

10       THE COURT:  All right.  Let's go right to the appeals

11  section.

12       MR. XIANG:  The defendant understands that Title 18

13  United States Code Section 3742 affords the defendant a

14  limited right to appeal the sentence imposed.  The defendant,

15  however, knowingly waives the right to appeal and collaterally

16  attack any component of a sentence imposed by the Court, which

17  falls within or is less than the sentencing range for

18  imprisonment, a fine and supervised release set forth in

19  section 3, paragraph 9 above, notwithstanding the manner in

20  which the Court determines the sentence.

21       In the event of an appeal of the defendant's sentence

22  by the government, the defendant reserves the right to argue

23  the correctness of the defendant's sentence.  The defendant

24  understands that by agreeing not to collaterally attack the

25  sentence, the defendant is waiving the right to challenge the

1    sentence in the event that in the future the defendant becomes

2    aware of previously unknown facts or a change in the law which

3    the defendant believes would justify a decrease in the

4    defendant's sentence.

5           The government waives its right to appeal any

6    component of a sentence imposed by the Court which falls

7    within or is greater than the sentencing range for

8    imprisonment, a fine and supervised release set forth in

9    section 3, paragraph 9 above, notwithstanding the manner in

10   which the Court determines the sentence.  However, in the

11   event of an appeal from the defendant's sentence by the

12   defendant, the government reserves its right to argue the

13   correctness of the defendant's sentence.

14          The government and the defendant agree not to appeal

15   the imposition of the sentence of imprisonment concurrently,

16   partially concurrently, consecutively or partially

17   consecutively with any undischarged State term of imprisonment

18   under Erie County court Case No. 10883-2013 that the defendant

19   is currently serving.

20          THE COURT:  Do you understand that, sir?

21          THE DEFENDANT:  Yes.

22          MR. XIANG:  This plea agreement represents the total

23   agreement between the defendant Damon Hunter and the

24   government.  There are no promises made by anyone other than

25   those contained in this agreement.  This agreement supercedes

1    any other agreements, written or oral, entered into between

2    the government and the defendant.  It is signed by myself on

3    behalf of the government and dated today.

4         Next it reads:  I, Damon Hunter, have read this

5    agreement, which consists of nine pages.  I have had full

6    opportunity to discuss this agreement with my attorney, Samuel

7    P. Davis.  I agree that it represents the total agreement

8    reached between myself and the government.  No promises or

9    representations have been made to me other than what is

10   contained in this agreement.  I understand all of the

11   consequences of my plea of guilty.  I fully agree with the

12   contents of this agreement.  I signed this agreement

13   voluntarily and of my own free will.

14        It's signed by the defendant and by his counsel, both

15   dated today.

16        THE COURT:  Now, Mr. Hunter, we've gone over the

17   agreement in court.  You indicated you understand it.  You

18   signed it indicating you understand it.  Your attorney says

19   he's gone over it with you.  He's satisfied you understand it.

20   Any questions, sir?

21        THE DEFENDANT:  Your Honor?

22        THE COURT:  Any questions --

23        THE DEFENDANT:  No, sir.

24        THE COURT:  -- about the agreement?  These are all

25   the terms and conditions of the plea agreement, which we just

US v DAMON HUNTER -- PLEA

1    read here in court, is that true?

2             THE DEFENDANT:  Yes.

3             THE COURT:  Okay.  No one made any other promises to

4    you, have they?

5             THE DEFENDANT:  No.

6             THE COURT:  How old are you, sir?

7             THE DEFENDANT:  Twenty-five.

8             THE COURT:  Where were you born and raised?

9             THE DEFENDANT:  Buffalo, New York.

10            THE COURT:  Where did you go to school, Mr. Hunter?

11            THE DEFENDANT:  High school?

12            THE COURT:  Yeah.

13            THE DEFENDANT:  East High School and Maritime.

14            THE COURT:  Did you graduate?

15            THE DEFENDANT:  No.

16            THE COURT:  Okay.  Why didn't you graduate?

17            THE DEFENDANT:  Just kept getting kicked out and then

18   went to Maritime.  They said that didn't want me back anymore.

19            THE COURT:  Okay.  Are you married?

20            THE DEFENDANT:  No.

21            THE COURT:  Have any children?

22            THE DEFENDANT:  No.

23            THE COURT:  What kind of work have you done over the

24   years?

25            THE DEFENDANT:  I've had a handful of jobs.  It was

1    like, all restaurant jobs like Pizza Hut.  I work at Holiday

2    Candy and Niagara Lubricant.

3            THE COURT:  Okay.  What kind of hobbies do you have?

4    What do you like to do?

5            THE DEFENDANT:  Play chess.

6            THE COURT:  Do what, sir?

7            THE DEFENDANT:  I play chess, you know, the board

8    game.

9            THE COURT:  Okay.

10           THE DEFENDANT:  Chess.  I like to grill food.

11           THE COURT:  Grill food?

12           THE DEFENDANT:  Yeah.

13           THE COURT:  Barbecue?

14           THE DEFENDANT:  Like barbecue, yeah.

15           THE COURT:  Are you any good at it?

16           THE DEFENDANT:  Yeah.

17           THE COURT:  What did you barbecue that's so good?

18   Ribs?

19           THE DEFENDANT:  Ribs.

20           THE COURT:  Do you marinate them specially or what do

21   you do with them.

22           THE DEFENDANT:  I don't marinate them.  I just --

23           THE COURT:  Just put them on the grill?

24           THE DEFENDANT:  Yes.

25           THE COURT:  Do you have a special rub or anything?

US v DAMON HUNTER -- PLEA

19

```
1            THE DEFENDANT:  No.  I just season them with up like,
2    with some pepper and stuff.
3            THE COURT:  Okay.  People like them?
4            THE DEFENDANT:  Yes.
5            THE COURT:  Okay.
6            THE DEFENDANT:  My brother likes them, so --
7            THE COURT:  All right.  Are you seeing a doctor for
8    any reason?
9            THE DEFENDANT:  No.
10           THE COURT:  Are you seeing a psychiatrist?
11           THE DEFENDANT:  No.
12           THE COURT:  Have you ever been hospitalized or
13   treated for a narcotic addiction?
14           THE DEFENDANT:  No.
15           THE COURT:  Are you today under the influence of any
16   drug, medicine or alcohol?
17           THE DEFENDANT:  No.
18           THE COURT:  Mr. Davis, your client is obviously
19   intelligent, alert.  He's focused, clearly understands
20   everything I'm saying, does not appear to be under the
21   influence of any drug, medicine or alcohol.  Is that
22   consistent with your observations?
23           MR. DAVIS:  Yes, Your Honor.
24           THE COURT:  Now, Mr. Hunter, is anyone forcing you to
25   plead guilty?
```

1           THE DEFENDANT:  No.

2           THE COURT:  Anyone threaten you in any way?

3           THE DEFENDANT:  No.

4           THE COURT:  Your willingness to plead guilty, you

5     discussed it with your lawyer.  He discussed it with the

6     government's lawyer.  Based on his discussions, this plea

7     agreement was prepared.  That's basically how this all came

8     about.  True?

9           THE DEFENDANT:  Yes.

10          THE COURT:  Now, do you understand the offense which

11    you are pleading guilty to is a serious offense and if it's

12    accepted by the Court, you'll be found guilty and there will

13    be no appeal as long as the sentence is consistent with the

14    terms and conditions of the plea agreement.  Being found

15    guilty of this offense may deprive you of certain rights.  You

16    may lose the right to vote, the right to hold public office,

17    the right to serve a jury, right to posses a firearm, certain

18    civil service-type jobs like police officer.  You may be

19    deprived of those rights.  Do you understand that, sir?

20          THE DEFENDANT:  Yeah.  I didn't know that until right

21    now, but I understand that, though.

22          THE COURT:  Okay.  And do you understand all the

23    possible consequences?  We talked about paragraph 1 of the

24    plea agreement.  We talked about the guideline.  We talked

25    about the possible cost, the possible fine, the $100 penalty

1    assessment.  Do you understand all that, sir?

2           THE DEFENDANT:  Yes.

3           THE COURT:  Do you understand, sir, that you have a

4    right to plead not guilty, as you've done up to the present

5    time and you have a right to persist to that plea of not

6    guilty and you have a right to a trial, a fair trial in this

7    courtroom where a jury of 12 people will decide whether you're

8    guilty or not guilty based upon the evidence and the law.

9           First of all, I'd be the judge.  And to the best of

10   my ability, I would conduct a trial fairly and impartially.  I

11   have no interest in this case other than to make sure you and

12   the government get a fair trial.  In selecting the jury, we

13   would have in the courtroom somewhere around 50 to 75 people.

14   Who are these people?  People who live in this area, in this

15   district.

16          We would have in here probably somewhere around

17   maybe, as I said, 50 to 75 people.  They would be in the

18   courtroom.  You'd be in the courtroom.  Your lawyer would be

19   with you.  They'd all be put under oath.  They'd answer all my

20   questions honestly and truthfully.

21          If there were anyone in that group that would not be

22   fair and impartial, that person would be removed.  And you'd

23   have input on that and say, hey, Judge, that one guy, he's

24   already made up his mind.  And if I agree with you, no reason

25   why I wouldn't if it makes sense, that person would be gone.

1            Also, you can remove up to ten people for any reason

2    you want other than race or gender.  You couldn't say, well, I

3    don't want any women on my jury, or don't want a particular

4    race of people.  You can't discriminate in that sense.  Do you

5    understand that, sir?

6            THE DEFENDANT:  Yes.

7            THE COURT:  And Mr. Davis will present you.  You have

8    the right to hear and see all the witnesses and have Mr. Davis

9    cross-examine the witnesses.  And after the government's

10   rested its case, you could provide a defense.  You can

11   subpoena witnesses or any records that are relevant to the

12   trial issues, but you don't have to do anything.  You're

13   presumed not guilty.  You don't have to prove a thing.  The

14   burden is on the government to convince all 12 jurors that

15   you're guilty beyond a reasonable doubt.  Do you understand

16   that, sir?

17           THE DEFENDANT:  Yes.

18           THE COURT:  Where you can sit there and you say, you

19   prove it.  I don't have to do a thing.  And by entering a plea

20   of guilty, if it's accepted by the Court, there will be no

21   trial, you'll have waived your right to trial and all the

22   other rights.  Do you understand that?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  As I said, the government has to prove

25   beyond a reasonable doubt to the satisfaction of all 12 jurors

1    that you're guilty.  Do you understand that?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Counsel, is there any reason why I should

4    not accept the plea?

5            MR. XIANG:  No, Your Honor.

6            THE COURT:  You're both satisfied I've complied with

7    all requirements of Rule 11?

8            MR. DAVIS:  Yes, Your Honor.

9            MR. XIANG:  Yes, Your Honor.

10           THE COURT:  All right.  How do you plead to count --

11   is it 2 or --

12           MR. XIANG:  It's Count 1.

13           THE COURT:  Count 1.  How do you plead to Count 1,

14   sir, guilty or not guilty?

15           THE DEFENDANT:  Guilty.

16           THE COURT:  It's the finding of the Court that the

17   defendant is fully competent and cable of entering an informed

18   plea.  His plea of guilty is a knowing and voluntary plea

19   supported by an independent basis of facts containing each of

20   the essential elements of the offense charged.  This plea is,

21   therefore, accepted and he's now judged guilty of Count 1.

22           Sentencing will be scheduled for December 21st at

23   12:30.  A written presentence report will be prepared by the

24   probation office to assist the Court in imposing sentence.

25   Mr. Hunter, you'll be afforded an opportunity to meet with the

1   probation officer to provide information in the report.  Your

2   attorney should be present during the interview.  You'll

3   receive a copy of the report as well as your attorney.  You

4   will file any additional information or any motions or

5   memorandum that are consistent with the terms and conditions

6   of the plea agreement and both you and your attorney will have

7   an opportunity to address the Court at the time of sentencing

8   and say anything you wish to say in mitigation of the

9   sentence.  The scheduling for filing all papers will be as

10  follows.

11          THE CLERK:  The initial presentence report will be

12  due November 6th.  The statement of the parties with respect

13  to sentencing factors and objections, if any and motions, if

14  any, will be due November 30th.  The responses to any

15  objections or responses to any motions will be due

16  December 7th.  A sentencing memorandum and/or character

17  letters in support of the defendant will be due December 7th.

18          Any motion to adjourn the sentencing date will be due

19  by December 11th.  The final presentence report will be due

20  December 14th and any character letters and or a sentencing

21  memorandum -- excuse me.  The government's response to any

22  legal argument in defendant's sentence memorandum will be due

23  December 14th.

24          THE COURT:  All right.  Any further?

25          MR. XIANG:  Not from the government, Judge.  In terms

1   of where Mr. Hunter will be housed, would he still go back

2   or -- I just want to make sure his position is clear on the

3   record.

4           THE COURT:  Mr. Davis, what do you want?

5           MR. DAVIS:  Judge, we want him turned back to State

6   custody.  It has come to our attention today that the

7   individual contemplated in this agreement has been indicted on

8   murder charges and he's currently, I believe, at the Niagara

9   County Jail.  So, we want him back in State custody for that

10  reason alone.

11          THE COURT:  All right.  He'll remain in State

12  custody.

13          MR. DAVIS:  Thank you, Judge.

14          MARSHAL:  Mr. Davis, is there any way that he can see

15  the probation office today?

16          THE COURT:  Yeah, that might be a good idea.  If you

17  have any problems, we'll notify the probation officer.

18  Mr. Davis, you're available, aren't you?

19          MR. DAVIS:  I can be.

20          THE COURT:  That's very good.  If you have any

21  problems, we'll go to find a probation -- might as well do it

22  today.  It's fresh in your mind.  Mr. Hunter is here and

23  rather than, you know -- I don't know where he's going to be

24  in the State custody.  This way, you get it all done.

25          MR. DAVIS:  I understand, Judge.

1          THE COURT:   Okay.   Thank you.

2    (Proceedings ended.)

1                    *     *     *     *     *     *     *

2

3                    I certify that the foregoing is a

4         correct transcription of the proceedings

5         recorded by me in this matter.

6

7

8

9                                   s/ Megan E. Pelka, RPR

10                                  Court Reporter,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25